**REESE RICHMAN LLP**
Michael R. Reese (State Bar No. 206773)
Kim E. Richman
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email:     mreese@reeserichman.com
           krichman@reeserichman.com

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
Stephen Gardner
Amanda Howell
5646 Milton Street, Suite 211
Dallas, Texas 75206
Telephone: (214) 827-2774
Facsimile: (214) 827-2787
Email:     SGardner@cspinet.org
           AHowell@cspinet.org

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CV12-09567** CBM(Ex)

| | |
|---|---|
| DAVID GREEN, on behalf of himself and all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| DR PEPPER SNAPPLE GROUP, INC., | |
| Defendant. | |

Plaintiff David Green ("Plaintiff"), by and through his undersigned counsel, alleges the following based upon his own personal knowledge and the investigation of his counsel.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a proposed class action against Dr Pepper Snapple Group, Inc. ("Defendant") for misleading consumers about the nutritional qualities, health qualities, and ingredients of its soft drinks, namely, 7UP Cherry Antioxidant, Diet 7UP Cherry Antioxidant, 7UP Mixed Berry Antioxidant, Diet 7UP Mixed Berry Antioxidant, 7UP Pomegranate Antioxidant, and Diet 7UP Pomegranate Antioxidant, as well as other soft drink products sold under the "7UP" brand name that Defendant marketed, labeled, and/or advertised as including antioxidants (collectively, the "Product" or "Products").

2.     During the period September 6, 2006, to the present (the "Class Period"), Defendant engaged in a widespread marketing and advertising campaign to mislead consumers about the nutritional qualities, health qualities, and ingredients of the Products.  Specifically, Defendant conveyed the message that the Products were healthful, natural, and antioxidant-rich beverages that derived their antioxidant content from real cherries or real berries.

3.     By misleading consumers about the nutritional qualities, healthfulness, and ingredients of the Products as detailed herein, Defendant was able to distinguish the Products from similar soft drinks and, thereby, command a premium price for the Products.  Defendant was motivated to mislead consumers for no other reason than to take away market share from competing products and increase its own sales and profits.

4.     Defendant conveyed its misleading message through a widespread marketing and advertising campaign on the packaging of the Products and on various

2

CLASS ACTION COMPLAINT

websites, including Defendant's 7UP brand website, http://www.7up.com (the "7UP Website").

5. For example, Defendant asserts that the Products contain antioxidants, including by using the representation "Antioxidant" in the Product names and on the Product packaging.

6. Defendant also prominently displays pictures of cherries or berries on the Product packaging. Each individual can or bottle of the Product displays images of real fruit directly below the word "Antioxidant," as does the outer packaging of Product multi-can or multi-bottle containers. *See* graphic insert; http://www.7up.com/products/#/Cherry (last visited Aug. 27, 2012); http://www.7up.com/products/#/MixedBerry (last visited Apr. 27, 2012).



3

CLASS ACTION COMPLAINT

1

2      7.     Further, on the 7UP Website, Defendant displays 7UP Cherry

3  Antioxidant surrounded by images of real cherries, along with the statements "There's

4  never been a more delicious way to cherry pick your antioxidant!  With all-natural

5  cherry flavors, 7UP Cherry Antioxidant is the perfect pick me up."  *See* graphic insert;

6  http://www.7up.com/products/#/Cherry (last visited Aug. 27, 2012).  Further, in the

7  recent past, the 7UP Website displayed animated images of falling cherries each time

8  a visitor highlighted an image of the 7UP Cherry Antioxidant soft drink.  *See id.* (last

9  visited Apr. 27, 2012).

10
11
12
13
14
15
16    
17
18
19
20
21
22

23     8.     On the 7UP Website, Defendant also displays Diet 7UP Cherry

24  Antioxidant surrounded by images of real cherries, along with the statements "Diet

25  7UP Cherry Antioxidant has the same great taste without the calories of the original.

26  A delicious way to cherry pick your antioxidant!"  *See* http://www.7up.com/

27  products/#/Cherry (last visited Aug. 27, 2012).

28

4

CLASS ACTION COMPLAINT

9.     The representation "Antioxidant," which is part of the name of each of the Products, is central to the marketing of the Products and is displayed prominently on their packaging.  The images of real cherries and real berries are also central to the marketing of the Products, and these images are displayed prominently on the Product packaging and are often juxtaposed with the representation "antioxidant".

10.     Contrary to Defendant's claims and representations, the Products do not contain any real cherries, real berries, or even extracts from those fruits.  Nor do the Products derive their antioxidant content from real, antioxidant-rich cherries; real, antioxidant-rich raspberries, blackberries, and cranberries; or real, antioxidant-rich pomegranates.  Unbeknownst to the average consumer, the Products contain only one antioxidant—vitamin E.

11.     Further, as explained in detail below, the minimal amount of added vitamin E in the Products is insufficient to provide consumers with the health benefits that Defendant's representations lead them to believe the Products are able to confer.  Defendant's representations are especially misleading in light of other ingredients in the Products that are dangerous to consumers' health, such as high fructose corn syrup in the non-"Diet" Products and the artificial sweeteners acesulfame potassium and aspartame in the "Diet" Products.

12.     Accordingly, Defendant's labeling and naming of the Products as "antioxidant"; Defendant's inclusion of images of real cherries, real berries, or real pomegranates on the Product packaging and in the Product marketing and advertising, often juxtaposed with the term "antioxidant"; and the other representations detailed herein are false, misleading, and designed to deceive consumers into purchasing Defendant's Products.  Plaintiff brings this action to stop Defendant's misleading practices.

//

//

5

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

13.     This Court has original jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

14.     Venue for this action properly lies in this District pursuant to 28 U.S.C. § 1391.  Substantial acts in furtherance of the alleged improper conduct, including Defendant's dissemination of false information regarding the nutritional qualities, health qualities, and ingredients of the Products, occurred within this District.

## PARTIES

15.     Plaintiff David Green resides in Sherman Oaks, California, and has no intention of changing his residence.  During the Class Period, Plaintiff Green bought 7UP brand Products bearing the "Antioxidant" representation on the Product packaging and in the Product name.  In deciding to purchase the Products, Plaintiff Green relied upon Defendant's misleading inclusion of the word "Antioxidant" in the Product name and on the Product packaging, juxtaposed with images of real cherries or real berries, which suggested to Plaintiff Green that the Products provided the health benefits associated with the antioxidants in real cherries or real berries.  Had Plaintiff known at the time he purchased the Products that they did not contain real cherries or real berries; that their antioxidant content was not derived from real cherries or real berries, or even extracts from those fruits, but instead was based on Defendant's fortification of the Products with an isolated antioxidant; and that the

CLASS ACTION COMPLAINT

only antioxidant in the Products, vitamin E, was only present in a minimal amount that was insufficient to provide Plaintiff Green with any health benefits; Plaintiff Green would not have purchased the Products.

16.    Defendant Dr Pepper Snapple Group, Inc. is a Delaware corporation with its principal place of business in Plano, Texas.  Dr Pepper Snapple Group, Inc. markets and distributes 7UP Cherry Antioxidant, Diet 7UP Cherry Antioxidant, 7UP Mixed Berry Antioxidant, Diet 7UP Mixed Berry Antioxidant, 7UP Pomegranate Antioxidant, Diet 7UP Pomegranate Antioxidant, and other similar products throughout California and the nation.

## SUBSTANTIVE ALLEGATIONS

17.    The images of real cherries and real berries on the Product packaging and in the Product marketing and advertising suggest to the average consumer that the Products contain real cherries or real berries, including real raspberries, real blackberries, real cranberries, and real pomegranates, or that the Products contain extracts from these fruits.

18.    Defendant's juxtaposition of the representation "Antioxidant" with images of real cherries or real berries suggests to the average consumer that any antioxidant content in the Products is derived from real cherries or real berries.

19.    Unfortunately for consumers, the Products do not contain any real cherries, real berries, or even extracts from those fruits.  Nor do the Products derive their antioxidant content from real, antioxidant-rich cherries; real, antioxidant-rich raspberries, blackberries, or cranberries; or real, antioxidant-rich pomegranates. Instead, Defendant bases its antioxidant representations solely on its fortification of the Products with a trace amount of a form of vitamin E called d-alpha tocopheryl acetate—the only antioxidant in the Products.

20.    Moreover, the Products do not provide the health benefits that reasonable consumers associate with antioxidants.

7

CLASS ACTION COMPLAINT

21.    Defendant's addition of vitamin E to the Products provides only 15% of the Food and Drug Administration's ("FDA") Recommended Daily Intake ("RDI") of vitamin E per 12 ounce can.  Current scientific research, however, does not indicate that vitamin E provides significant health benefits at this level.

22.    For example, studies have found that vitamin E doses greater than 400 international units every other day are required to provide humans with health benefits.  *See* H.D. Sesso et al., *Vitamin E and C in the Prevention of Cardiovascular Disease in Men*, 300 JAMA 2123, 2123 (2002) (finding that vitamin E doses greater than 400 international units every other day are required to suppress elevated systemic oxidative stress in humans); *see also* L. Jackson Roberts II et al., *The Relationship Between Dose of Vitamin E and Suppression of Oxidative Stress in Humans*, 43 FREE RADIC. BIOL. MED. 1388, 1391-1392 (2007).  By comparison, the RDI established by the FDA for vitamin E is 30 international units.  *See* 21 C.F.R. § 101.9(c)(8)(iv).  At 10% RDI per serving, the Products contain less than 3 international units per serving—only 0.75% of the amount of vitamin E that scientific research establishes is required to provide humans with health benefits.

23.    Moreover, consumers seeking simply to meet the RDI for vitamin E are also unlikely to experience health benefits from 7UP Antioxidant Products. The National Institutes of Health confirms that vitamin E deficiency is rare, and the average American likely exceeds the RDI for vitamin E.  National Institutes of Health, Office of Dietary Supplements, *Dietary Supplement Fact Sheet: Vitamin E*, *available at* http://ods.od.nih.gov/factsheets/VitaminE-HealthProfessional/ (accessed Oct. 11, 2011).

24.    Further, scientific research suggests that isolated antioxidants, such as the vitamin E added to Defendant's Products, do not provide the same health benefits as a

//

//

8

CLASS ACTION COMPLAINT

diet rich in fruits and vegetables.[1]  Clinical trials indicate that individual antioxidants, taken alone, do not appear to have consistent preventative effects.  *See, e.g.*, Rui Hai Liu, *Health Benefits of Fruits and Vegetables are from Additive and Synergistic Combinations of Phytochemicals*, 78 Am. J. Clinical Nutrition 517S, at 518S (2003); *see also* National Institutes of Health, Office of Dietary Supplements, *Dietary Supplement Fact Sheet: Vitamin E*, *available at* http://ods.od.nih.gov/factsheets/ VitaminE-HealthProfessional/ (accessed Oct. 11, 2011) (advising consumers to obtain antioxidants such as vitamin E through healthful foods such as almonds, peanut butter, broccoli, and spinach, rather than through supplements or fortified foods).

25.    In this regard, the United States Department of Agriculture notes that

> [a] fundamental premise of the Dietary Guidelines [for Americans] is that nutrients should come primarily from foods.  Foods in nutrient-dense, mostly intact forms contain not only the essential vitamins and minerals that are often contained in nutrient supplements, but also dietary fiber and

---

[1]  Numerous studies establish that consuming whole fruits and vegetables benefits health and suggest that consumption of individual vitamins does not provide the same benefits.  *See e.g.*, Penny M. Kris-Etherton et al., *Bioactive Compounds in Foods: Their Role in the Prevention of Cardiovascular Disease and Cancer*, 113 Am. J. Med. 71S, 71S–88S (2002) ("Numerous epidemiologic studies indicate that an increase in the consumption of fruits and vegetables is associated with a decrease in the incidence of cardiovascular disease (CVD), [coronary heart disease], and stroke."); Y. Kelly et al., *Nutrition and Respiratory Health in Adults: Findings from the Health Survey for Scotland*, 21 European Respiratory J. 664, 664–671 (2003) ("[T]he active agent(s), or the most beneficial  combinations of dietary components are contained within whole foods.  It may be that improving the diet, by increasing the consumption of fresh fruit, vegetables and fish, rather than consumption of vitamin supplements, will be beneficial in helping to protect against airway disease."); Manuela Blasa et al., *Fruit and Vegetable Antioxidants in Health, in Bioactive Foods Promoting Health: Fruits and Vegetables* 37, 37–58 (Ronald Ross Watson & Victor R. Preedy eds.,  2010) ("The synergy among phytochemicals is one of the reasons that nutritional guidelines insist on varying the foods in one's diet, particularly fruits and vegetables.").

CLASS ACTION COMPLAINT

1    other naturally occurring substances that may have positive health
2    effects.

3    United States Department of Agriculture, *Dietary Guidelines for Americans, 2010*,
4    Ch. 5 p. 49 (Jan. 31, 2011), *available at* http://www.cnpp.usda.gov/DGAs2010-
5    PolicyDocument.htm (click on "Chapter 5: Building Healthy Eating Patterns").

6        26.   Not only do the Products fail to provide the health benefits suggested by
7    the representations and images on the packaging and in the Product marketing, the
8    Products include ingredients that are harmful or potentially harmful to human health.

9        27.   The non-"Diet" Products are in fact nothing more than slightly fortified
10   sugar water.  One serving of 7UP Cherry Antioxidant, for example, contains 38 grams
11   of sugars and 140 calories.  The non-"Diet" Products also include high fructose corn
12   syrup, an artificial ingredient that scientific research has established is dangerous to
13   human health.  *See, e.g.*, G.A. Bray, S.J. Nielsen, & B.M. Popkin, *Consumption of*
14   *high-fructose corn syrup in beverages may play a role in the epidemic of obesity*,
15   79(4) Am. J. of Clinical Nutrition 537, 537–43 (2004).

16       28.   While the "Diet" Products do not contain added sugars or high fructose
17   corn syrup, they do contain the artificial sweeteners acesulfame potassium and
18   aspartame, both of which are synthetic.  There is some scientific evidence that
19   artificial sweeteners such as these are carcinogenic to animals[2] and that they increase
20

21   [2] *See* Myra L. Karstadt, *Testing Needed for Acesulfame Potassium, an Artificial*
22   *Sweetener* 114 Environ. Health Perspectives A516 (Sept. 2006); Morando Soffritti,
     *Acesulfame Potassium: Soffritti Responds*, 114 Environ. Health Perspectives A516
23   (Sept. 2006); Morando Soffritti et al., *Life-Span Exposure to Low Doses of Aspartame*
24   *Beginning During Prenatal Life Increases Cancer Effects in Rats*, 115 Environ.
     Health Perspectives 1293 (2007), *available at* http://ehp03.niehs.nih.gov/article/
25   info:doi/10.1289/ehp.10271; Morando Soffritti et al., *First Experimental*
26   *Demonstration of the Multipotential Carcinogenic Effects of Aspartame Administered*
     *in the Feed to Sprague-Dawley Rats*, 114 Environ. Health Perspectives 379 (2006).
27

28

CLASS ACTION COMPLAINT

the risk of preterm birth in humans.[3]

29.    The Products also include an ingredient called Red 40, which may also impose health risks.  *See* Shuji Tsuda, et al., *DNA damage induced by red food dyes orally administered to pregnant and male mice*, 61(1) Toxicological Sci. 92, 92–99 (2001), *available at* http://www.ncbi.nlm.nih.gov/pubmed/11294979?dopt=Abstract; Charles V. Vorhees, et al., *Developmental toxicity and psychotoxicity of FD and C red dye No 40 (allura red AC) in rats*, 28(3) Toxicology 207, 207–17 (Oct. 1983), *available    at*    http://www.ncbi.nlm.nih.gov/pubmed/6636206?dopt=Abstract;    L. Koutsogeorgopoulou, et al., *Immomological aspects of the common food colorants, amaranth and tartrazine*, 40(1) Veterinary & Hum. Toxicology 1, 1–4 (Feb. 1998), *available at* http://www.ncbi.nlm.nih.gov/pubmed/9467198?dopt=Abstract.

30.    In summary, Defendant's representations, including the representation "Antioxidant" juxtaposed with images of real cherries or real berries, mislead reasonable consumers into believing that the Products contain real cherries or real berries, and/or believing that the antioxidant content of the Products is derived from real cherries or real berries, or extracts from these fruits, even though the Products do not contain real cherries or real berries, or extracts from those fruits, and the only antioxidant in the Products—vitamin E—is only present in the Products due to fortification by Defendant.  Defendant thus misleads reasonable consumers into believing that the Products provide antioxidant-related health benefits that are the same as or similar to the antioxidant-related health benefits provided by fruits and vegetables naturally rich in many nutrients and phytonutrients, only one of which is vitamin E.  The minimal amount of vitamin E in the Products and the fact that vitamin

---

[3] Thorhallur I. Halldorsson et al., *Intake of Artificially Sweetened Soft Drinks and Risk of Preterm Delivery: A Prospective Cohort Study in 59,334 Danish Pregnant Women*, 92 Am. J. Clin. Nutr. 626 (2010).

CLASS ACTION COMPLAINT

E exists in the Products in isolation as an additive mean that the Products will not provide consumers with the health benefits that Defendant's representations lead them to expect, and, even worse, the high sugar content, high fructose corn syrup, aspartame, acesulfame potassium, and/or Red 40 found in the Products are actually dangerous to consumers' health. Defendant's use of the term "Antioxidant" and the other representations and images detailed herein in the marketing, labeling, and advertising of the Products is thus nothing more than a marketing gimmick intended to deceive consumers into purchasing the Products. Accordingly, Defendant's representations concerning the nutritional qualities, health qualities, and ingredients of the Products are misleading, deceptive, and unlawful.

31. Moreover, Defendant's fortification of the Products with chemical additives is in direct violation of the FDA's Fortification Policy. 21 C.F.R. § 104.20 (the "Fortification Policy"). The Fortification Policy states specifically that the FDA "does not encourage indiscriminate addition of nutrients to foods, ***nor does it consider it appropriate to fortify … snack foods such as … carbonated beverages***." *See* 21 C.F.R. § 104.20(a) (emphasis added). Because Defendant fortifies the Products, which are all carbonated beverages, with vitamin E, Defendant has engaged in actions that the FDA does not consider appropriate, as the Fortification Policy explicitly states.

32. According to the FDA, the Fortification Policy has the full force and effect of law. *See* Food and Drug Administration, *Guidance for Industry: Food Labeling; Nutrient Content Claims; Definition for "High Potency" and Definition for "Antioxidant" for Use in Nutrient Content Claims for Dietary Supplements and Conventional Foods; Small Entity Compliance Guide*, 3 (May 1, 2011), *available at* http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm063064.htm; *see also* Letter from Food and Drug

Administration, to Miles V. McEvoy, Deputy Administrator, National Organic Program (Apr. 14, 2011), at 4, *available at* http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5090415 (stating that since "the provisions of the fortification policy have been incorporated into two labeling regulations which have the force and effect of law . . . FDA may issue a warning letter and take enforcement action if a manufacturer markets a food bearing one of these nutrient content claims and the food contains a nutrient addition that is inconsistent with the fortification policy.").

33.     The federal Courts have also recognized that the Fortification Policy has legally binding effect.  For example, the United States District Court for the Eastern District of New York explained in 2010 that "[t]he FDA Fortification Policy is itself non-binding but … is incorporated by reference into binding FDA regulations.  As the FDA has explained:

> While it is true that the fortification policy is only a guideline, in the context of new § 101.54(e)(1)(ii), FDA has subjected the use of § 104.20 (21 C.F.R. 104.20) to notice and comment rulemaking.  Interested persons were given notice that FDA intends to use that provision as more than a guideline.  Such persons had an opportunity to object.... No comments did.  Therefore, the fact that part 104 (21 CFR part 104) is generally intended to be used as a guideline has no significance here.

*Ackerman v. Coca-Cola Co.*, Case No. CV–09–0395 (JG)(RML), 2010 WL 2925955, at *9, n. 16 (E.D.N.Y. July 21, 2010) (citing 58 Fed. Reg. 2302, 2362).

34.     The FDA has issued several warning letters to companies, including Defendant and The Coca-Cola Company, for similar violations of its Fortification Policy.  *See, e.g.*, Letter from Food and Drug Administration to Larry D. Young, President and CEO, Dr Pepper Snapple Group (Aug. 30, 2010), *available at* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm224571.htm; Letter from Food and Drug Administration to Muhtar Kent, President and Chief

CLASS ACTION COMPLAINT

Executive Officer, The Coca-Coca Company (Dec. 10, 2008), *available at* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2008/ucm1048050.ht m; *see generally Diet Coke Plus Proves to Be a Minus With the FDA,* 16 No. 12 FDA Advertising and Promotion Manual Newsletter 11 (2009).

35. Accordingly, Defendant's fortification of the Products, which are all carbonated beverages, with vitamin E violates the FDA Fortification Policy, which has the full force and effect of law and which the FDA routinely enforces.

## CLASS ALLEGATIONS

36. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons in the United States who purchased Defendant's Products (as defined herein) during the Class Period (the "Class"). Excluded from the Class are officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors or assigns, and any entity in which they have or have had a controlling interest.

37. At this time, Plaintiff does not know the exact number of Class members, but, given the nature of the claims and the number of retail stores selling Defendant's Products nationally, Plaintiff believes that the Class members are so numerous that joinder of all members of the Class is impracticable.

38. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

> a. Whether Defendant labeled, marketed, advertised, and/or sold the Products to Plaintiff and those similarly situated using false, misleading, and/or deceptive statements or representations,

1    including statements or representations concerning the nutritional

2    qualities, health qualities, and ingredients of the Products;

3    b.    Whether Defendant omitted and/or misrepresented material facts in

4          connection with the sales of the Products;

5    c.    Whether Defendant participated in and pursued the common

6          course of conduct complained of herein; and

7    d.    Whether Defendant's labeling, marketing, advertising, and/or

8          selling of the Products as healthful and nutritious constitutes an

9          unfair or deceptive consumer sales practice.

10   39.   Plaintiff's claims are typical of those of the Class because Plaintiff, like

11   all members of the Class, purchased Defendant's Products in a typical consumer

12   setting and sustained damages from Defendant's wrongful conduct.

13   40.   Plaintiff will adequately protect the interests of the Class and has retained

14   counsel who are experienced in litigating complex class actions.  Plaintiff has no

15   interests that conflict with those of the Class.

16   41.   A class action is superior to other available methods for the fair and

17   efficient adjudication of this controversy.

18   42.   The prerequisites to maintaining a class action for injunctive or equitable

19   relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met, as Defendant has

20   acted or refused to act on grounds generally applicable to the Class, thereby making

21   appropriate final injunctive or equitable relief with respect to the Class as a whole.

22   43.   The prosecution of separate actions by members of the Class would

23   create a risk of establishing inconsistent rulings and/or incompatible standards of

24   conduct for Defendant.   For example, one court might enjoin Defendant from

25   performing the challenged acts, whereas another might not.  Additionally, individual

26   actions could be dispositive of the interests of the Class even though certain Class

27   members might not be parties to such actions.

28

15
CLASS ACTION COMPLAINT

44.     Defendant's conduct is generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.  As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)

45.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

46.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA").

47.     Plaintiff and members of the Class are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

48.     Plaintiff, members of the Class, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

49.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

50.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff and the Class members certain qualities of its Products.

51.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

CLASS ACTION COMPLAINT

52.    Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order requiring Defendant to remove language and images on the Product packaging and in Product advertising and marketing that indicates that the Products provide the health benefits associated with antioxidants contained in real cherries or real berries, including but not limited to the representation "Antioxidant" in the name of each Product and images of real cherries or real berries on the Product packaging.

53.    Plaintiff and members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

54.    The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff and members of the Class.

55.    CLRA § 1782 NOTICE.  On September 6, 2012, a CLRA demand letter was sent to Defendant via certified mail that provided notice of Defendant's violation of the CLRA and demanded that within thirty (30) days from that date, Defendant remedy the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, a complaint seeking damages in accordance with the CLRA would be filed.  Defendant has failed to comply with the letter.  Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff, on behalf of himself and all other members of the Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

56.    THEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

**(Violation of California Business and Professions Code § 17200, *et seq.*)**
**(Unlawful Business Acts and Practices)**

57.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

17
CLASS ACTION COMPLAINT

58.     Such acts of Defendant, as described above, and each of them constitute unlawful business acts and practices.

59.     In this regard, Defendant's marketing, advertising, packaging, labeling, distributing, and selling of its Products violates California's Sherman Food, Drug and Cosmetics Law, California Health & Safety Code § 109875, *et seq*. (the "Sherman Law").

60.     In relevant part, the Sherman Law declares that food is misbranded if its labeling is false or misleading in any particular way and further provides that it is unlawful for any person to misbrand any food.  Cal. Health & Safety Code §§ 110660, 110765.

61.     The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing."  Cal. Health & Safety Code § 109995.  Defendant is a corporation and, therefore, a "person" within the meaning of the Sherman Law.

62.     The business practices alleged above are unlawful under the California Consumers Legal Remedy Act, California Civil Code § 1750, *et seq*. ("CLRA"), which forbids deceptive advertising.

63.     The business practices alleged above are unlawful under California Business and Professions Code § 17200, *et seq*. by virtue of violating § 17500, *et seq*., which forbids untrue advertising and misleading advertising.

64.     As a result of the business practices described above, Plaintiff and the Class members, pursuant to California Business and Professions Code § 17203, are entitled to an order enjoining such future conduct on the part of Defendant and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten

1  gains and to restore to any person in interest any money paid for its Products as a

2  result of the wrongful conduct of Defendant.

3      65.    The above-described unlawful business acts and practices of

4  Defendant present a threat and reasonable likelihood of deception to Plaintiff and

5  members of the Class in that Defendant has systematically perpetrated and continues

6  to perpetrate such acts or practices upon members of the Class by means of its

7  misleading marketing, advertising, packaging, labeling, distributing, and selling of its

8  Products.

9      66.    THEREFORE, Plaintiff prays for relief as set forth below.

10

11                      **THIRD CAUSE OF ACTION**

12     **(Violation of California Business and Professions Code § 17200, *et seq.*)**
                **(Fraudulent Business Acts and Practices)**

13     67.    Plaintiff repeats each and every allegation contained in the paragraphs

14  above and incorporates such allegations by reference herein.

15     68.    Such acts of Defendant as described above constitute fraudulent

16  business practices under California Business and Professions Code § 17200, *et seq*.

17     69.    As more fully described above, Defendant's misleading

18  marketing, advertising, packaging, and labeling of its Products is likely to deceive

19  reasonable California consumers.  Indeed, Plaintiff and other members of the Class

20  were unquestionably deceived regarding the characteristics of Defendant's Products,

21  as Defendant's marketing, advertising, packaging, and labeling of its Products

22  misrepresents and/or omits the true nutritional qualities, health qualities, and

23  ingredients of the Products.  Defendant's portrayal of its Products as being made with

24  real cherries or real berries (or extracts from these real fruits) and being healthful and

25  rich in antioxidants is misleading and deceptive because, among other things more

26  fully described herein, the Products contain only minimal amounts of a single, isolated

27

28

CLASS ACTION COMPLAINT

1  antioxidant that is present in the Products due to fortification by Defendant and

2  contain no real fruit.

3        70.    This fraud and deception caused Plaintiff and members of the Class

4  to purchase more of Defendant's Products than they would have or to pay more than

5  they would have for Defendant's Products had they known that, as described more

6  fully herein, the representations and images on Defendant's Products conveying that

7  they are made from real cherries or real berries (or extracts from these real fruits), that

8  they are "Antioxidant" and provide the health benefits associated with real,

9  antioxidant rich cherries or berries, and that they are healthful are false and/or

10  misleading.

11        71.    As a result of the business acts and practices described above, Plaintiff

12  and the Class, pursuant to California Business and Professions Code § 17203, are

13  entitled to an order enjoining such future conduct on the part of Defendant and such

14  other orders and judgments which may be necessary to disgorge Defendant's ill-gotten

15  gains and to restore to any person in interest any money paid for Defendant's Products

16  as a result of the wrongful conduct of Defendant.

17        72.    THEREFORE, Plaintiff prays for relief as set forth below.

18              **FOURTH CAUSE OF ACTION**

19     **(Violation of California Business and Professions Code, § 17500, *et seq.*)**
       **(Misleading and Deceptive Advertising)**
20

21        73.    Plaintiff repeats each and every allegation contained in the paragraphs

22  above and incorporates such allegations by reference herein.

23        74.    Plaintiff asserts this cause of action for violations of California Business

24  and Professions Code § 17500, *et seq*. for misleading and deceptive advertising

25  against Defendant.

26        75.    At all material times, Defendant engaged in a scheme of offering its

27  Products for sale to Plaintiff and other members of the Class by way of, *inter alia*,

28

commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials.  Defendant's portrayal of its Products as being made from real cherries or real berries and as being healthful and rich in antioxidants is misleading and deceptive because, among other things more fully described herein, the Products contain only minimal amounts of a single, isolated antioxidant that is present in the Products due to fortification by Defendant and contain no real fruit.  Said advertisements were made within the State of California and come within the definition of advertising as contained in Business and Professions Code § 17500, *et seq*. in that such promotional materials were intended as inducements to purchase Defendant's Products, are representations disseminated by Defendant to Plaintiff and the Class members, and were intended to reach members of the Class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive.

76.  In furtherance of said plan and scheme, Defendant has prepared and distributed within the State of California – via commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials – representations that misleadingly and deceptively represent the Products as being made from real cherries or real berries, and as being healthful and nutritious.  Consumers, including Plaintiff, necessarily and reasonably relied on these materials concerning Defendant's Products.  Consumers, including Plaintiff and the Class members, were among the intended targets of such representations.

77.  The above acts of Defendant, in disseminating said misleading and deceptive representations throughout the State of California to consumers, including Plaintiff and members of the Class, were and are likely to deceive reasonable consumers, including Plaintiff and other members of the Class, by obfuscating the real health qualities, nutritional qualities, and ingredients of the Products as more fully

1  detailed herein, in violation of the "misleading prong" of California Business and

2  Professions Code § 17500.

3       78.   As a result of the above violations of the "misleading prong" of

4  California Business and Professions Code § 17500, *et seq.*, Defendant has been

5  unjustly enriched at the expense of Plaintiff and the other members of the Class.

6  Plaintiff and the Class members, pursuant to California Business and Professions

7  Code § 17535, are entitled to an order of this Court enjoining such future conduct on

8  the part of Defendant, and such other orders and judgments which may be necessary

9  to disgorge Defendant's ill-gotten gains and restore to any person in interest any

10 money paid for its Products as a result of the wrongful conduct of Defendant.

11      79.   THEREFORE, Plaintiff prays for relief as set forth below.

12 **FIFTH CAUSE OF ACTION**

13 **(Unjust Enrichment)**

14      80.   Plaintiff realleges and incorporates the above paragraphs of this class

15 action Complaint as if set forth herein.

16      81.   As a result of Defendant's deceptive, fraudulent, and misleading

17 labeling, advertising, marketing, and sales of its Products, Defendant was enriched, at

18 the expense of Plaintiff, and all others similarly situated, through the payment of the

19 purchase price for Defendant's Products.

20      82.   Under the circumstances, it would be against equity and good conscience

21 to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff the

22 members of the Class in light of the fact that the Products purchased by Plaintiff and

23 the members of the Class were not what Defendant purported them to be.  Thus, it

24 would be unjust or inequitable for Defendant to retain the benefit without restitution to

25 Plaintiff and the members of the Class for the monies paid to Defendant for such

26 Products.

27      83.   THEREFORE, Plaintiff prays for relief as set forth below.

28

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff and the Class members seek relief against Defendant as follows:

A.    For an order certifying the proposed Class herein under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3); appointing Plaintiff as representatives of the class; and appointing his undersigned counsel as class counsel;

B.    For a declaration that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C.    For an award of restitution pursuant to California Business & Professional Code §§ 17203, 17535;

D.    For an award of disgorgement pursuant to California Business & Professional Code §§ 17203, 17535;

E.    For an order enjoining Defendant's unlawful and deceptive acts and practices pursuant to California Business & Professional Code §§ 17203, 17535.

F.    For injunctive relief, damages, and restitution pursuant to California Civil Code § 1780;

G.    Monetary damages, including, but not limited to any compensatory, incidental, or consequential damages in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law with respect to the common law claims alleged;

H.    Statutory damages in the maximum amount provided by law;

I.    Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

J.    For an order awarding Plaintiff and the Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

K.    For any further relief that the Court may deem appropriate.

CLASS ACTION COMPLAINT

## JURY TRIAL DEMANDED

Plaintiff and the members of the Class hereby demand a trial by jury.

Dated: November 8, 2012                    Respectfully submitted,


                                           **REESE RICHMAN LLP**

                                           **By:** _____
                                           Michael R. Reese (State Bar No. 206773)
                                           Kim E. Richman
                                           875 Avenue of the Americas, 18th Floor
                                           New York, New York 10001
                                           Telephone:  (212) 643-0500
                                           Facsimile:  (212) 253-4272
                                           Email:      mreese@reeserichman.com
                                                       krichman@reeserichman.com

                                           **CENTER FOR SCIENCE IN THE
                                           PUBLIC INTEREST**
                                           Stephen Gardner
                                           Amanda Howell
                                           5646 Milton Street, Suite 211
                                           Dallas, Texas 75206
                                           Telephone:  (214) 827-2774
                                           Facsimile:  (214) 827-2787
                                           Email:      SGardner@cspinet.org
                                                       AHowell@cspinet.org

                                           *Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV12- 9567 CBM (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
DR PEPPER SNAPPLE GROUP, INC.
5301 Legacy Drive
Plano, TX 75024

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| DAVID GREEN, on behalf of himself and all others similarly situated, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV12-09567** (PΛΝΙΕx) |
| v. | |
| DR PEPPER SNAPPLE GROUP, INC., | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Michael R. Reese_____, whose address is _REESE RICHMAN LLP, 875 Avenue of the Americas, 18th Floor, New York, NY 10001_. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

NOV - 8 2012

Clerk, U.S. District Court

**JULIE PRADO**

Dated: _____

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

---

CV-01A (10/11)                                    **SUMMONS**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
DAVID GREEN, on behalf of himself and all others similarly situated,

**DEFENDANTS**
DR PEPPER SNAPPLE GROUP, INC.,

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Michael R. Reese (SBN 206773), REESE RICHMAN LLP, 875 Avenue of the Americas, 18th Floor, New York, NY 10001, (212) 643-0500; and Stephen Gardner, CENTER FOR SCIENCE IN THE PUBLIC INTEREST, Dallas, TX.

Attorneys (If Known)
Van H. Beckwith, BAKER BOTTS L.L.P., 2001 Ross Avenue, Dallas, TX 75201, (214) 953-6500.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business in this State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (Place an X in one box only.)
☒1 Original Proceeding   ☐2 Removed from State Court   ☐3 Remanded from Appellate Court   ☐4 Reinstated or Reopened   ☐5 Transferred from another district (specify):   ☐6 Multi-District Litigation   ☐7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☒ Yes ☐ No     ☐ MONEY DEMANDED IN COMPLAINT: $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. §1332(d) (diversity jurisdiction)

**VII. NATURE OF SUIT** (Place an X in one box only.)

OTHER STATUTES: ☐400 State Reapportionment ☐410 Antitrust ☐430 Banks and Banking ☐450 Commerce/ICC Rates/etc. ☐460 Deportation ☐470 Racketeer Influenced and Corrupt Organizations ☐480 Consumer Credit ☐490 Cable/Sat TV ☐810 Selective Service ☐850 Securities/Commodities/ Exchange ☐875 Customer Challenge 12 USC 3410 ☐890 Other Statutory Actions ☐891 Agricultural Act ☐892 Economic Stabilization Act ☐893 Environmental Matters ☐894 Energy Allocation Act ☐895 Freedom of Info. Act ☐900 Appeal of Fee Determination Under Equal Access to Justice ☐950 Constitutionality of State Statutes

CONTRACT: ☐110 Insurance ☐120 Marine ☐130 Miller Act ☐140 Negotiable Instrument ☐150 Recovery of Overpayment & Enforcement of Judgment ☐151 Medicare Act ☐152 Recovery of Defaulted Student Loan (Excl. Veterans) ☐153 Recovery of Overpayment of Veteran's Benefits ☐160 Stockholders' Suits ☐190 Other Contract ☐195 Contract Product Liability ☐196 Franchise

REAL PROPERTY: ☐210 Land Condemnation ☐220 Foreclosure ☐230 Rent Lease & Ejectment ☐240 Torts to Land ☐245 Tort Product Liability ☐290 All Other Real Property

TORTS PERSONAL INJURY: ☐310 Airplane ☐315 Airplane Product Liability ☐320 Assault, Libel & Slander ☐330 Fed. Employers' Liability ☐340 Marine ☐345 Marine Product Liability ☐350 Motor Vehicle ☐355 Motor Vehicle Product Liability ☐360 Other Personal Injury ☐362 Personal Injury-Med Malpractice ☐365 Personal Injury-Product Liability ☐368 Asbestos Personal Injury Product Liability

IMMIGRATION: ☐462 Naturalization Application ☐463 Habeas Corpus-Alien Detainee ☐465 Other Immigration Actions

TORTS PERSONAL PROPERTY: ☒370 Other Fraud ☐371 Truth in Lending ☐380 Other Personal Property Damage ☐385 Property Damage Product Liability

BANKRUPTCY: ☐422 Appeal 28 USC 158 ☐423 Withdrawal 28 USC 157

CIVIL RIGHTS: ☐441 Voting ☐442 Employment ☐443 Housing/Accommodations ☐444 Welfare ☐445 American with Disabilities - Employment ☐446 American with Disabilities - Other ☐440 Other Civil Rights

PRISONER PETITIONS: ☐510 Motions to Vacate Sentence Habeas Corpus ☐530 General ☐535 Death Penalty ☐540 Mandamus/ Other ☐550 Civil Rights ☐555 Prison Condition

FORFEITURE/ PENALTY: ☐610 Agriculture ☐620 Other Food & Drug ☐625 Drug Related Seizure of Property 21 USC 881 ☐630 Liquor Laws ☐640 R.R. & Truck ☐650 Airline Regs ☐660 Occupational Safety /Health ☐690 Other

LABOR: ☐710 Fair Labor Standards Act ☐720 Labor/Mgmt. Relations ☐730 Labor/Mgmt. Reporting & Disclosure Act ☐740 Railway Labor Act ☐790 Other Labor Litigation ☐791 Empl. Ret. Inc. Security Act

PROPERTY RIGHTS: ☐820 Copyrights ☐830 Patent ☐840 Trademark

SOCIAL SECURITY: ☐861 HIA (1395ff) ☐862 Black Lung (923) ☐863 DIWC/DIWW (405(g)) ☐864 SSID Title XVI ☐865 RSI (405(g))

FEDERAL TAX SUITS: ☐870 Taxes (U.S. Plaintiff or Defendant) ☐871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number:   CV12-09567

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)   CIVIL COVER SHEET   Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
  ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Texas |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date November 8, 2012

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |